Good morning, Your Honors, and may it please the Court. My name is Emily Sir and I represent Defendant Appellant Pasadena Police Officer Bartman Horn. At this time, I would like to request five minutes of my time for rebuttal. This Court shall reverse the lower court's denial of summary judgment and find that Officer Horn is entitled to qualified immunity because his actions neither violated the Constitution nor clearly established law. In this case, we have two sets of competing facts. So, the first question that the Court must answer is which set of facts apply. Those to which Mr. Holloway agreed made up the factual basis of his criminal plea, of his criminal conviction, or those which contradict the factual basis of his criminal conviction. Case law and the Ninth Circuit's previous... Yes, Your Honor. All right. So, he wasn't admitting to guilt, right? He was not admitting to guilt, Your Honor, but he was admitting to a factual basis to make up the conviction. Do you think he was admitting to everything that was said in the preliminary hearing? That's your position? Yes, Your Honor, and we believe that's supported by case law, including Yount, Winder, and Torres, which all say that when a criminal conviction is based off a factual basis, including preliminary hearing transcripts, all the facts are included unless at the time of the plea hearing, the criminal defendant limits the basis. So, for instance, in this case... In any event, why is this issue before us now? The issue is... Excuse me. May I finish? Yes. The question right now is taking the facts as presented by the petitioner, by the plaintiff is entitled to summary judgment. It seems to me your argument is just another aspect of the notion that there are competing facts and will be decided down the road, but I don't know why we're deciding it now. Yes, Your Honor. The reason we're talking about it now or deciding it now is because what Yount holds, what some of these other cases that we briefed hold, is that a 1983 plaintiff cannot contradict the factual basis of his criminal conviction. So, while we're not claiming here that there's... That's a heck argument and that's definitely not before us. No, understood, Your Honor. What we're arguing is not that this case is heck barred, but that the set of facts that the court needs to use in order to analyze qualified immunity, where they should apply the gram factors, is to the preliminary hearing transcripts because those are the facts that Mr. Holloway has already agreed made up his criminal conviction and he can't now contradict them. So, while we're not saying that heck bars him from bringing this suit, we're saying that the facts that should be analyzed should be the facts from the preliminary hearing transcripts and not the facts that Mr. Holloway later testified to that are in contradiction to... And can you tell me what cases you're talking about that deal with that specific issue, not with the heck issue? Well, Your Honor, there's no case directly on point as most of the time the heck decision is at the lower case. However, in this case, we have the Ninth Circuit's decision in Holloway, in the prior decision here. If we look back, Officer Holloway... Excuse me, Officer Horn moved to dismiss on the basis of Mr. Holloway's criminal conviction. The Ninth Circuit, when made to be dismissed only if it is not possible to construe Holloway's plea as consistent with the facts he alleges in his complaint. In other words, the Ninth Circuit, in this case, said that if Holloway's plea is inconsistent with his allegations, Officer Horn is entitled to... Are you aware that there's a federal rule that forbids the introduction of a no-law plea as evidence? Rule 11, I believe. Again, we're not introducing it to say that this is exactly what happened. We're saying these are the facts that Mr. Holloway agreed made up his criminal conviction, and he can't contradict those now. He's tied to those facts, and whether those facts entitle Officer... And you think the prior Ninth Circuit opinion in this case said that? It seems to me the prior Ninth Circuit opinion in this case came pretty close to concluding that there was qualified immunity. There is no qualified immunity here. It did say, well, maybe there'll be this transcript, and maybe it will be relevant, but it didn't say that it would be preclusive. Well, yes. At the motion-to-dismiss stage, the Ninth Circuit didn't have before it what the basis of Holloway's criminal conviction was. So, as it must do, it accepted Mr. Holloway's allegations that his plea only encompassed certain facts. And using that, they said, well, then you're entitled to qualified... You're not entitled to qualified immunity. But what did he plead to? He pleaded... Well, first of all, he pleaded no. Second of all, he said that it was a factual basis, which seems to me to say that somewhere in there, there's a factual basis, but not that everything that was said is bound by it. Yes, Your Honor. However, you said that if you don't limit the factual basis at the plea hearing, then you're tied to all of those facts. And that's upheld, again, by Winder and Torres, which say the exact same thing. And in Torres, they're not even specifically looking at it HECFAR. What they're saying is the facts that need to be analyzed are only the facts contained in the preliminary hearing transcripts. We can't go beyond that and look at facts that contradict it because the plaintiff is tied to those facts by his no low plea. And I believe in both those cases, it was a no low plea as well, Your Honor. I have a question. What part of the guilty plea precludes this action? I don't understand why it bars this. It's not that it bars it, Your Honor. It's that it sets forth the facts that we need to use. So there's one set of facts contained in the preliminary hearing transcripts, which Mr. Holloway agreed made up the basis for his conviction. There's another set of facts that he testified to at the deposition that are in contradiction. They're not very far off, but there's the question of whether Mr. Holloway pointed a gun at Officer Horn. So he pled that he did point the gun at Officer Horn, whereas in his later deposition, he contradicted himself to say he didn't. At the end of the day, while we argue that he should be tied to the preliminary hearing transcripts, it ultimately doesn't matter because case law says that even if Mr. Holloway didn't point the gun at Officer Horn, Officer Horn would have qualified immunity. So utilizing either sets of facts, he should be entitled to qualified immunity. Isn't that conclusion contrary to the Ninth Circuit's earlier opinion? The Ninth Circuit opinion in this case? Yes, on the motion to dismiss. I apologize, I'm not fully understanding the question, Your Honor. What I'm saying is it was on a motion to dismiss, but it assumed the facts in the complaint and said that there was no qualified immunity, right? Right. Those facts are the facts that you're now saying that even if he didn't point the gun, there would be qualified immunity. Aren't those the same facts? No, Your Honor. The facts in the allegation are different than the ultimate facts that came out in the deposition transcript. In the allegations, which we don't need to rely on anymore, he doesn't stick solely with those. So once we get to the deposition transcripts, we have undisputed testimony that the entire incident lasted 50 seconds, that Mr. Holloway was shot four times in one to one and a half minutes. We have testimony, we have, it's undisputed where the four shots were, one to the chest, one to the front of the thigh, one to the left side and one to the left backside. All of that came out, you know, during discovery, during the litigation of this case. And we have to look at that full totality. We also understand that at the end of this rapid 50 second foot pursuit in which they were zigzagging through a high crime residential area, it's undisputed that Mr. Holloway turned toward him. So if we ignore the fact that he has a gun, which is really the only difference between the preliminary transcripts and the deposition transcripts, you still end up with qualified immunity because those facts alone show that there was a serious danger. We see that. I'm sorry. What was the serious danger if he didn't have the gun? It's undisputed that Officer Horn believes that Holloway was armed. So even if he wasn't armed at the time that he spun around towards Officer Horn, Officer Horn doesn't know that. He has no reason to. Except that on Mr. Holloway's facts, he did know that he saw him throw the gun. Well, two responses. One, Mr. Holloway assumes that Officer Horn saw him throw the gun. He has no actual personal knowledge. He didn't see him. Well, except that after the fact, the officer told several people that he threw the gun. Yes. He also said someone needs to go find the gun. But even, I apologize. Yeah. So there's pretty good evidence if you credit the plaintiff that Holloway, that Horn knew he threw the gun. He didn't have it. So yes, using that set of facts, Officer Horn would still be entitled to qualified immunity. That Mr. Holloway tossed one gun in close proximity to Officer Horn and then turned around on him, doesn't mean that Officer Horn has to trust that Holloway is not armed with another weapon. We saw in the Miller... Anytime somebody, an officer is chasing somebody and thinks he has a gun, even though he doesn't see a gun and doesn't know he has a gun, he can shoot him. No, Your Honor. But under the facts of this, using the totality here, which is not limited to that, we have a surprise foot pursuit that lasted a quick 50 seconds. There are mere split seconds to determine what the actual danger is. And so when you do have someone that you reasonably believe is armed and he turns towards you, we have several cases that say under those circumstances, it's not clearly established that that would be a violation because the officer doesn't know when that person is spinning around, whether he's going to shoot him or what's going to happen. We have several cases where there's no gun even present or there's no gun that gets pointed in the officer's direction, but the court still holds that that furtive movement of spinning around towards the officer is enough to suggest that his life is in danger. Officer Horn had no way of knowing whether Holloway had another weapon, whether he was turning on him to attack. Can we go back to this point you were making earlier? You cited Wilkinson v. Torres. Could you show me where in Wilkinson what you're talking about? I'm supporting the notion that the entire preliminary injunction is binding. Right. So I'm pulling that from the Winder case and the Torres case. Wilkinson v. Torres. Oh, I apologize. Yes. So in that case, what the court essentially held was that because he had agreed to the- I'm coming away from the opinion. I'm trying to find it. Yes, I apologize, Your Honor. Let me hold that. I don't have the- I'll look for this. Okay, go ahead. No, I can't. And Your Honor, I do see that I'm running low on my time for rebuttal. So if I could find that site for you, I could give it to you on the rebuttal. That would be great. Thank you. Okay. You want to reserve your time? Yes, Your Honor. Thank you very much. Mr. Gallipo. Yes, good morning to all of you. Dale Gallipo on behalf of the plaintiff and appellee. I think what really drives the discussion today is the various material factual disputes for several reasons. First, we don't believe this court really has jurisdiction to hear this interlocutory appeal because of all the material factual disputes. Well, it has jurisdiction to hear whether there is qualified immunity based on the facts most favorable to the plaintiff, right? Correct. I mean, if the court is going to exercise jurisdiction, that would be the analysis. And I'd like to go over those facts in just a moment if I could. The other point I wanted to make is the memorandum, which Judge Bersan pointed out, where you had judges Reinhart, Tashima, and Winn basically say, assuming the facts as alleged, there is no qualified immunity. And essentially, those are the facts that came out in the evidence in the case. So they really are the same facts. This really is the same issue. And I would submit, Your Honor, there is no case that says someone is bound by everything in a preliminary hearing transcript, which is not a true adjudication on the merits. That's all that he did is plead no contest and say there's some factual basis in the transcript for the plea. And the court also addressed that on the prior memorandum. Regarding the plaintiff's facts, I think it's very important because, as the court is aware, the court cannot weigh the evidence or judge credibility on this motion. They have to assume all plaintiff's facts and take all reasonable inferences from them. And we've touched on most of them, but this started as a consensual encounter. There was a short pursuit. Mr. Holloway tossed the gun, which the officer, to some extent, was trained that people will run with guns and try to toss them, and that's what he did. And the court has to assume that Officer Horn saw him toss the gun because, as Judge Persaud pointed out, after the incident, he dispatched, he tossed the gun, he told Officer Jones he had tossed the gun before he was even searched. And when Officer Glockson got there, he told him where the gun was, on the other side of the fence. And, importantly, when that gun was tossed, there was 20 to 30 feet between the officer and Mr. Holloway. So he sees him toss the gun, and then, importantly, the shooting doesn't happen at that point, based on plaintiff's facts. The shooting happens 10 seconds later, approximately. And during that time, Mr. Holloway, although he tried to move away from the gun and the officer, he stumbled some, went down partially, got up, and then slowed down. And at this point, he's about 20 feet away, and what we think is the most important fact for the plaintiffs, and I don't know if anyone can see me, but he put his hands up to the side of his head to show the officer he was visibly unarmed. And then, and only after he put his hands up, did he slowly turn to his left and start to get down. And that's when the shots occurred, without any warning and without any commands. And there were shots as he was going down to the ground, and also shots while he was on the ground. Mr. Holloway testified to that, and so did an independent percipient witness. And as the courts are aware, at least one of the shots hit him in the back or the buttocks, and there's a bullet to this day lodged in a spinal cord. I have a question. May I ask a question here? Yes, Judge. Did your client testify to the contrary or state to the contrary in the court proceeding? Contrary. That's what your opponent says, that he stated something in court or in his plea that contradicts all this. Yes, thank you for the question, Judge Seiler. And the answer to that is no. Mr. Holloway's testimony is consistent with what I just proffered. That's what he testified to. That's what's in our separate statements. I think what Judge Seiler means is at the time in the criminal case. Right. That's right. Yes, Judge Brisson. And he did not testify in the criminal case, Judge Seiler. There was a preliminary hearing where the officer gave some self-serving, we believe self-serving testimony. And at the time of his plea, and he didn't plea to assault with a deadly weapon, which is what you would expect if someone was pointing a weapon at an officer. He simply pled to resisting by force. And as the prior Ninth Circuit panel held, that would have been sufficient as a factual basis for him running with a gun or tossing a gun over a fence in the presence of the officer. So there's nothing from our position, Judge Seiler, that is inconsistent or binds him to any of the self-serving testimony given by the officer at the preliminary hearing. Thank you. You're very welcome. And so. What's your response to Appellant's argument that Mr. Horn may have had, excuse me, Mr. Holloway may have had a second gun? Thank you, Judge Lee. I guess anyone could argue that in any case, right? If someone has a weapon and is either told to drop it or just drops it voluntarily, I guess it's always possible that someone could have a second weapon. What we think is important here, Judge Lee, as I demonstrated under our facts, that after the about 10 second period after he dropped the gun, he raised his hands so that they were visible to the officer and they were visibly empty. And there's no further reaching movement at that time. And based on our facts, Judge Lee, he didn't turn until he raised his hands and started to go to the ground. So from our perspective, Judge Lee, if you assume our facts for purposes of this hearing, the officer shot a visibly unarmed man who did not appear to be reaching for a second weapon. Isn't it also true that another Graham factor is what was the underlying crime? There was no underlying crime here, wasn't there? That's correct, Judge Broussard. When you look at the three factors under Graham, they really all weigh in favor of Mr. Holloway. The first one is the immediate threat, which, assuming our facts from our position, there was no immediate threat, certainly not an immediate threat of death or serious bodily injury, which is required under the law to use deadly force. In fact, there's cases that we cited like Cournot and George, where a person has a gun in their hand and that fact is not enough. The other two factors would be the nature of the crime. And in this case, he really wasn't committing any crime. It started as a consensual encounter. And although he ran, he ran before the officer got out and he was obvious for obvious reasons trying to get rid of that gun, not trying to attack the officer. And then the third one is whether he was evading or resisting. And although there was resistance before he tossed the gun under our facts, he essentially was surrendering or trying to surrender at the time of the shots. And so the last point I wanted to make on the clearly established point, I think, you know, when you talk about qualified immunity, the question always comes up under what facts, you know, under what facts are we looking at this to decide if there was a constitutional violation or the law was clearly established. And we would submit if you accept our facts, which the lower court did, the prior panel did, and we are hopeful that this panel will. The law was clearly established. It's not as if in the taser cases, for example, when the taser first came out, it was unclear when you can use a taser. For years, it's been clear under the law that you can only shoot someone if there is an immediate threat of death or serious bodily injury and not certainly where someone's surrendering. And the Colonel and George cases I currently I pointed out, I thought were important, perhaps because in those cases, the person did have a gun in their hand, but it was not pointed at the officer in Ting. The person dropped the gun as we have here. But our facts, we believe, are better. And, you know, one could argue that shooting a visibly on our man who's trying to surrender may fall within the obvious as well. So we think for all those reasons, this appeal should be denied. And if there's any other questions that anyone has for me on any of the issues, I'd be happy to try to answer that. Are there any cases that Mr. It says, find your client to the whole of the preliminary injunction. She cited Tories in one other case. I looked at Tories. I'm not sure where. But are there such cases? What are they saying? Judge Bersan, I would submit that my research on that issue has indicated there is no case that says someone is bound to all the facts in a preliminary hearing where there's someone giving one sided self-serving testimony. And that's all that's important for purposes. And as you pointed out in the beginning, Judge Bersan, the court really doesn't have necessarily jurisdiction to hear heck issues on interlocutory appeal. But even if the court was to look at that issue for purposes of the argument, the other side is making, there is no case that says that someone is bound by every fact in a preliminary hearing, no matter how inaccurate or untruthful that fact is. The only thing that's important is that there's some factual basis in the preliminary hearing to support the plea, which the running and tossing the gun in this case was. So we respectfully disagree with their contention. And I have never seen a case that specifically says that. Are there any other questions from any of the judges? My colleagues have any questions? Okay, thank you very much. Yes, Your Honor. So I will start with the case sites that you were just asking Mr. Galipo about. So the first one I'm going to point the court to is Yount, which we discussed in our case. This is Yount v. Sacramento. It's a California Supreme Court case that specifically holds that there's no support for the notion that a bar preventing collateral tax on a criminal conviction is inapplicable when the plaintiff seeks to only undermine a part of his criminal conviction. Relying on that, the court in Winder v. McMahon. That's a district court case, right? That is a district court case, Your Honor. Let's go on. It's a district court case. What else? The Torres case is also a district court case. It's actually Torres v. Rule. I see. So there is no case. Well, these cases basing off of the California Supreme Court and other Ninth Circuit precedent hold that when you have a preliminary hearing transcript as the basis for your criminal conviction, you're not allowed to tear it apart. Winder specifically says that because the plaintiff agreed that the hearing transcript from the preliminary hearing supplied the factual basis for his plea, and he failed to limit the agreement to only certain portions of the transcript, provide a separate factual basis, or in any other manner suggest the criminal trial should not rely on any particular portion, then he was bound by the entire preliminary hearing. That's not a case that's binding on us. It is a case that's persuasive, though, Your Honor. There's no case that says the opposite way. This is in line with what Heck says. It's in line with what Yul says. But also to address some of Mr. Galipo's arguments, I would say, first off, in talking about the cases that he cites for the clearly established wrong, Cerno and Ting, these are completely different cases. In all the cases that he cited, you have multiple officers with time to deliberate and investigate, and in this case, in a stationary location. Here, we have a 50-second rapid foot pursuit where Officer Horn was all by himself and which he had no time to deliberate or assess what was going on. Also, the cases such as Ting, which he said was more egregious, if you would, or our case was, in Ting, the criminal defendant was naked. So yes, he had a gun, and yes, he tossed the gun. So when he then lunged later, it was very obvious that he wasn't armed because he wasn't wearing any clothes. And again, there were five heavily armed officers surrounding him. This is not the same case here. We have a guy who's wearing clothes that concealed at least one weapon, and so when he turns on Officer Horn, there's fear. And that fear is justified by cases we already have. The Easley case is directly on point. The Santa Bez case is directly on point. Easley is the case that as to which CERT on bank was granted and it was vacated and it doesn't exist anymore, right? Well, Your Honor, I see my time has run out. If I could briefly respond to that. So the reason we use Easley is, yes, it was overturned on procedural grounds. The merits were untouched. In fact, the dissent agreed with the merits. But if we look at the original case in 2018, they found that it was not a constitutional violation. Yes, I know, but it was vacated, and maybe it was vacated because there was a vote at the court that thought that it was an incorrect opinion.  That was the end result, but that doesn't tell you why it went on bank, does it? Your Honor, if I could just... The reason that we point to that is because if a Ninth Circuit panel in 2018 looked at that case and thought that it was constitutional, then it cannot be clearly established that in 2017... Of course it can. They could have been wrong. And the court could have thought it was wrong, and that was why they went on bank. But the clearly established prong requires it to be beyond debate, and if there's a Ninth Circuit panel that doesn't see it as beyond debate, it's hard to say that a reasonable officer in Officer Horn's position would have known that that was a constitutional violation. You don't use vacated opinions in the future. Again, there are other cases that support it. The Santabez case, which though it didn't grant qualified immunity, essentially said it would, but for the fact that there was a dispute whether Mr. Santabez was turning towards the officer at the time. The facts are almost identical, except here we know that Holloway was turning towards Officer Horn at the time. We also have the Bowles v. City of Porterville case, again, where it turned... It was a foot pursuit, exactly the same, where they knew very little about the plaintiff or about the suspect, but it turns on that pivotal point where you believe the person is armed and they turn towards you during a rapid foot pursuit. In that case, they grant you qualified immunity. We also have the Flores-Harrell v. Slade case, the Reese v. County of Sacramento case, and the C.V. by and through Villegas case. These are all Ninth Circuit cases? These are all Ninth Circuit cases from 2017, 2018, and 2016, which show that even when a suspect doesn't point the gun in the officer's direction, if the circumstances demonstrate... Tell me why the prior memorandum disposition in this case. Again, the prior memorandum was based on the pleading stages. What was the difference in the facts that you're now emphasizing? In the pleading, it was still clear that the plaintiff had had a gun, tossed the gun, and was turning to the officers, so what's the difference? I don't believe the fact that he was turning towards the officers is in the original... I thought he said he was surrendering at that point. He did say he was surrendering, but he's been very inconsistent on how he was surrendering. Similar with these shots to the back, when in reality, the shots are totally consistent with him turning towards the officer. One to the left chest, one to the left front of the thigh, one to the left side, one to the left back side. So you think the difference is that the reason we don't have to follow the earlier opinion is because it wasn't clear that he was turning to the officer at that point, even though he still could have had another gun, right? Theoretically. If somebody runs away from you, you could think maybe he had a gun. Again, Your Honor, what I think that the previous decision from the Ninth Circuit holds is that Mr. Holloway is bound by the facts of his plea agreement. The court invited us to turn in the evidence of what the plea was so that we could argue this, and that's exactly what we did. Of course you can argue it, that doesn't mean you win, and it certainly doesn't mean you win an appeal, as opposed to a magistrate court. Yes, Your Honor. Well, our position would be that Mr. Holloway is bound by the facts that he pled to because to allow him to contradict it would undermine his criminal plea. But in either case, we find that when you're looking at the cases that I just cited and the cases that are cited in our briefs, and the failure of plaintiffs to meet their burden of demonstrating cases that show otherwise, there's no officer in Mr. Horn's shoes, even under the facts that Mr. Holloway wants to use, that suggests that he should have known that it would have been a constitutional violation to shoot Mr. Holloway after a rapid 50-second foot pursuit in which he had no knowledge other than he thought that he was an armed gang member and that they were in a high-crime residential area. This is a situation where you have a real threat coupled with a furtive movement. We also have Mr. Holloway's testimony that he flung the gun across his body, which again, consistent with the Sanchez case, that those are the kind of furtive gestures that make it, at the very least, not clearly established that shooting under this situation... You're way over your time. I apologize, Your Honor. For these reasons, we ask that the court just overturn the dismissal. Thank you both very much for helpful arguments in a difficult case. The case of Holloway v. Horn is submitted, and we will go on to hear Batten v. Michigan Logistics.
judges: Siler, Berzon, Lee